**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **DIEGO GARZON,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**EXICURE, INC. et al.,**<br><br>      **Defendants.** | Civil Case No. 23-20912<br><br>Hon. Katherine S. Hayden, U.S.D.J.<br>Hon. Cari Fais, U.S.M.J.<br><br><br>**<u>OPINION</u>** |

**<u>CARI FAIS, U.S. MAGISTRATE JUDGE</u>**

Before the Court is Plaintiff's Motion for Leave to Amend the Complaint.  (Dkt. No. 40).

The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure

78(b) and Local Civil Rule 78.1(b).  For the reasons herein stated, the motion will be **GRANTED**.

I.      **<u>Background</u>**[1]

Plaintiff filed this motion on October 29, 2025.  (Dkt. No. 40).  Plaintiff's motion argues

that "there are two distinct breach of contract claims: one arising from Defendants' breach of the

Employment Agreement and a second arising from Defendants' breach of the accepted Severance

Agreement." (Pl.'s Ltr. Br. at 2, Dkt. No. 40-1).  The proposed First Amended Complaint ("FAC")

accordingly adds an additional breach of contract count (Count V) alleging that Defendants

breached a "Separation and Release Agreement"[2] that purportedly "acknowledged Dr. Garzon's

right to severance payment." (*See* Gattoni Cert. Ex. A ¶ 51, Dkt. No. 40-2).  The FAC alleges

---

[1] The Court assumes the parties' familiarity with the facts and recites only those relevant to this opinion.

[2] The Court understands this to be the agreement referenced in FAC proposed Count V as the "Severance Agreement." (*See* Certification of Michael V. Gattoni, Ex. A [hereinafter "Gattoni Cert. Ex. A"] at 22 (ECF Pagination), Dkt. No. 40-2).

that, "[o]n or about August 10, 2023," the parties "effectively had a meeting of the minds" on the terms of that Agreement. (*Id.* ¶ 119). The FAC requests "all severance pay, benefits, and reasonable attorneys' fees as required and provided by the Severance Agreement." (*Id.* at 23 (ECF Pagination) ¶ D). The FAC otherwise adds no new allegations compared to the original Complaint. (*Compare* Gattoni Cert. Ex. A ¶¶ 1–83, Dkt. No. 40-2, *with* Compl. ¶¶ 1–84, Dkt. No. 1).[3]

Defendants opposed the motion. (Defs.' Opp'n Br., Dkt. No. 44). The principal bases for Defendants' opposition are that granting leave is futile and that Plaintiff's amendment is unduly delayed. (*See id.* at 7–14). On futility, Defendants argue that, because Plaintiff failed to adequately plead the existence of a binding severance agreement, let alone a breach of any such agreement, Plaintiff's proposed amendment is futile. (*See id.* at 7–11). On undue delay, Defendants assert that, because Plaintiff did not move to amend until two years after the filing of the original Complaint based on facts allegedly known to him as early as October 2023, Defendants will be prejudiced if the Court grants leave. (*See id.* at 11–14).

In reply, Plaintiff argues that amendment is not futile because the FAC plausibly alleges the existence of an agreement on severance terms formed via communications between the parties following Plaintiff's resignation, (*see* Pl.'s Reply Br. at 2–5, Dkt. No. 48), and that there is otherwise a reasonable explanation for the timing of his motion: that Plaintiff moved for leave only after Defendants refused consent on or around August 15, 2025, (*see id.* at 5–6). Plaintiff also argues that granting leave will not unduly prejudice Defendants because the FAC adds just one new count, Count V, based on facts already alleged in the original Complaint. (*See id.* at 6).

---

[3] The FAC mis-notates the paragraph sequencing between paragraphs 77 and 79, causing incongruent paragraph numeration continuing from paragraph 78 when compared against the original Complaint. (*Compare* Gattoni Cert. Ex. A ¶¶ 77–79, Dkt. No. 40-2, *with* Compl. ¶¶ 77–79, Dkt. No. 1).

II.     **Discussion**

Federal Rule of Civil Procedure 15(a) provides that, other than amending pleadings once as a matter of course under conditions not applicable here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule embodies "the principle that the purpose of pleading is to facilitate a proper decision on the merits" such that leave to amend, when sought, "should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation modified). Rule 15 thus "embodies a liberal approach to pleading" that "counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202, 206 (3d Cir. 2006). When applying this liberal standard, courts in this Circuit adhere to "the general presumption in favor of allowing a party to amend pleadings." *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). Leave to amend should be denied only in cases of "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment." *O'Keefe v. Friedman & Friedman, Ltd.*, No. 16-4866, 2018 WL 1535234, at *3 (D.N.J. Mar. 29, 2018) (citing *Foman*, 371 U.S. at 182). None of these circumstances are present here.

A.     **Futility**

Beginning with Defendants' futility argument, the Court disagrees that the FAC fails to plausibly allege an agreement on severance terms between the parties. To determine whether an amendment is futile, the Court applies the standard used to conduct a Rule 12(b)(6) analysis. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, but whether the complaint sets forth 'enough facts to state a claim to relief that is plausible on its face.'" *Love v. N.J. Dep't of Corr.*, No. 15-3681, 2016 WL 3388304, at *3 (D.N.J. June 13, 2016) (quoting *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 570 (2007)).  The "applicable inquiry" requires drawing all reasonable inferences in the non-moving party's favor, accepting all facts alleged as true, and asking whether the moving party "should be afforded an opportunity to offer evidence in support of their claims."  *See In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).  Only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is a finding of futility appropriate under this standard.  *Id.*

To state a breach-of-contract claim sufficient to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's FAC must plausibly allege,

> first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to plaintiffs.

*Centennial Plaza Prop, LLC v. Trane U.S. Inc.*, 771 F. Supp. 3d 481, 492 (D.N.J. 2025) (quoting *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citation modified)).  "A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'"  *Goldfarb*, 245 A.3d at 577 (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).  "An offeree may manifest assent to the terms of an offer through words, creating an express contract, or by conduct, creating a contract implied-in-fact."  *Weichert*, 608 A.2d at 284 (citing *Restatement (Second) of Contracts* § 19(1) (1981)).  Courts also recognize "that an exchange of e-mails can create an enforceable agreement," *D'Agostino v. Domino's Pizza, Inc.*, No. 17-11603, 2025 WL 2161679, at *11 (D.N.J. Jan. 31, 2025) (quoting *Newmark v. Am. Express Co.*, No. 20-10241, 2022 WL 17340775, at *5 (D.N.J. Nov. 30, 2022)), and that "[p]arties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document," *Hackensack Univ. Med.*

*Ctr. v. Yinglian Xiao*, No. 17-2822, 2018 WL 2095598, at \*4 (D.N.J. May 7, 2018).

Drawing all reasonable inferences in Plaintiff's favor and accepting all facts alleged in the FAC as true, as the Court must do, *see In re Rockefeller*, 311 F.3d at 215, the Court finds that Plaintiff has plausibly alleged the existence of a Separation and Release Agreement that was formed via email communications between the parties on or about August 10, 2023, that purportedly acknowledged Plaintiff's right to severance payment following his resignation. (*See, e.g.*, Gattoni Cert. Ex. A ¶¶ 48–54, 119, Dkt. No. 40-2). As noted, the Rule 12(b)(6) inquiry requires determining "not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller*, 311 F.3d at 215. That is why allegations fail to meet the Rule 12(b)(6) standard only when "it appears *beyond doubt* that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.* (emphasis added), which is not the case here.

Specifically, the FAC's proposed Count V alleges that, "[o]n or about August 10, 2023, Exicure and Dr. Garzon effectively had a meeting of the minds with respect to the Severance Agreement." (Gattoni Cert. Ex. A ¶ 119, Dkt. No. 40-2). Defendants deny that any such meeting of the minds occurred because the Agreement never resulted in a formal signed document. (*See* Defs.' Opp'n Br. at 10, Dkt. No. 44). But it makes no difference for purposes of this motion that the Separation and Release Agreement never received explicit board approval or was not formalized or signed. (*See id.* at 10–11). That is because, as noted earlier, parties may form agreements by exchanging emails, *see D'Agostino*, 2025 WL 2161679, at \*11, even in the absence of a more formal agreement memorializing terms, *Hackensack Univ. Med. Ctr.*, 2018 WL 2095598, at \*4. Because the FAC plausibly pleads that the Separation and Release Agreement was formed via email communications between the parties, the Court finds that the FAC

sufficiently supports proposed FAC Count V.  *See Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (requiring courts to "consider the complaint *in its entirety*" to "determine whether the complaint *as a whole* contains sufficient factual matter to state a facially plausible claim" (emphases added) (citations omitted)).

Defendants' position that Plaintiff must "prove" the existence of the Separation and Release Agreement to succeed on this motion mistakes its posture.  (Defs.' Opp'n Br. at 9, Dkt. No. 44 (citing *Allen v. Bloomingdale's Inc.*, 225 F. Supp. 3d 254, 258 (D.N.J. 2016)).  Defendants rely on *Allen*, which is not controlling because it applies a summary judgment standard on a motion to compel arbitration to determine whether the parties entered a valid arbitration agreement.  225 F. Supp. 3d at 257–58.  That is a posture quite unlike this one.[4]  Here, Plaintiff need only allege, not prove, an agreement on severance terms "that is plausible on its face."  *Love*, 2016 WL 3388304, at *3.  As noted, mutual assent may occur by words or conduct, *Weichert*, 608 A.2d at 284, and courts have found, for that very reason, that communications exchanged by the parties,

---

[4] The other two cases on which Defendants mainly rely, *Shui v. Wang*, No. 23-2620, 2023 WL 8520778 (D.N.J. Dec. 8, 2023), and *TBI Unlimited, LLC v. Clearcut Lawn Decisions*, LLC, No. 12-3355, 2013 WL 1223643 (D.N.J. Mar. 25, 2013), are also distinguishable.  (*See* Defs.' Opp'n Br. at 11, Dkt. No. 44).

In *Shui*, the Court held that an offer to withdraw from an LLC operating agreement was not accepted because the offeree made the alleged offer to company counsel who had no authority to bind the parties.  *See* 2023 WL 8520778, at *4.  Here, in contrast, Plaintiff alleges that he communicated regarding the terms of the Separation and Release Agreement with Mr. Michael Kim, the Chief Executive Officer of the Company.  (*See* Gattoni Cert. Ex. A ¶¶ 33–34, 39, 42, 50–54); (*see also* Pl.'s Reply Br. at 4, Dkt. No. 48).  That is a key difference that, on this motion, the Court must accept as true.  *See In re Rockefeller*, 311 F.3d at 215.

And in *TBI Unlimited*, the Court found that the proposed amended complaint failed to allege facts "from which the Court c[ould] infer a contractual relationship" because "there [wa]s nothing to indicate that [the Defendant] had any contact whatsoever with Plaintiff."  2013 WL 1223643, at *3.  Here, however, Plaintiff alleges that he was in direct contact with Mr. Kim, (*see* Gattoni Cert. Ex. A ¶¶ 33–34, 39, 42, 43–54), which the Court also must accept as true, *see In re Rockefeller*, 311 F.3d at 215.

even in the absence of a formal agreement, may be sufficient to form a contract, *see, e.g.*, *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584–85 (3d Cir. 2009) (finding exchange of correspondence and conversation sufficient to form contract between parties); *Samra Plastic and Reconstructive Surgery v. United Healthcare Ins. Co.*, No. 25-6001, 2026 WL 266754, at *6 (D.N.J. Feb. 2, 2026) (same).  And that remains true even if a future, more formal agreement is contemplated by the parties.  *See Hackensack Univ. Med. Ctr.*, 2018 WL 2095598, at *4.

The FAC identifies that the Separation and Release Agreement addressed "severance payment obligations resulting from a termination for Good Reason as a result of a Change in Control consistent with the Employment Agreement," and that those terms "were accepted by the Company," (Gattoni Cert. Ex. A ¶¶ 53–54, Dkt. No. 40-2), as well as when and how Defendants allegedly breached those terms, (*see id.* ¶ 62).  This is, therefore, not a case where the plaintiff has "failed to identify any terms of [the alleged] contract," *Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *7 (D.N.J. Mar. 9, 2015); has failed to identify "a single provision of the [agreement] that [was] breached," *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485, 487 (3d Cir. 2015); or has failed to "identif[y] any specific ways in which the defendants breached their obligations under the contract," *Flaherty-Wiebel v. Morris, Downing & Sherred*, 384 F. App'x 173, 178 (3d Cir. 2010).  Plaintiff otherwise alleges that he performed his duties pursuant to his employment agreement while employed and that he suffered loss from the alleged breach.  (*See* Gattoni Cert. Ex. A ¶¶ 65, 125–26, Dkt. No. 40-2).  That suffices for purposes of this motion.  *See Centennial Plaza Prop*, 771 F. Supp. 3d at 492.

The Court need not and does not conclude on this motion that the facts alleged in the FAC definitively prove the existence of a valid, enforceable agreement on severance terms. *Cf. Inventiv Health Consulting, Inc. v. Atkinson*, No. 18-12560, 2019 WL 6522742, at *7 (D.N.J.

Dec. 4, 2019) ("[C]oncrete proof of an agreement is not necessary to overcome a motion to dismiss."). Rather, the Court need only conclude, and here does conclude, that the entire face of the FAC plausibly alleges the existence of an agreement. *Love*, 2016 WL 3388304, at *3. The Court therefore holds that proposed FAC Count V is not futile and thus that Plaintiff "should be afforded an opportunity to offer evidence in support of [his] claim[]." *In re Rockefeller*, 311 F.3d at 215. Whether or not the parties' proofs bear out a valid, enforceable agreement on severance terms reflecting the parties' communications following Plaintiff's notice of his departure is a decision to be made on a later day. But on this motion, considering especially that "[t]he liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case," *Arthur*, 434 F.3d at 206, the Court rejects Defendants' futility argument.

### B.    <u>Undue Delay</u>

Turning to Defendants' undue delay argument, the Court disagrees that the FAC is unduly delayed and that granting leave to amend would unduly prejudice Defendants. It is well-settled that delay alone is not sufficient to deny leave to amend "unless the delay unduly prejudices the non-moving party." *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). In the absence of demonstrated prejudice or other considerations warranting a denial of leave that are not applicable here, district courts should freely grant leave to amend. *See Boileau*, 730 F.2d at 938 (concluding district court erred in declining leave to amend ten years after filing of original action where there was no demonstrated prejudice). Courts have held that non-moving parties suffer no prejudice where the proposed amended pleading alleges no new facts necessitating extensive additional discovery. *See Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (distinguishing cases where "extensive additional discovery" concerning "new parties" or "new concepts and theories" was prejudicial). Courts have granted leave to amend

even where the non-moving party *may* be prejudiced by a need for additional discovery, so long as the prejudice is not undue, *see Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 908 (2d Cir. 1977), which is why "[a] mere claim of prejudice is not sufficient" and why "the need for additional discovery" alone "does not conclusively establish prejudice," *Dole v. Arco Chem.*, 921 F.2d 484, 488 (3d Cir. 1990). To demonstrate undue prejudice, Defendants must show instead that they were "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered" had the motion been brought sooner. *Id.* They have not met that burden.

Additionally, the Court rejects Defendants' argument that Defendants are unduly prejudiced because Plaintiff filed this Motion "the very month the parties are taking depositions." (Defs.' Opp'n Br. at 13, Dkt. No. 44). Plaintiff moved for leave on October 29, 2025, (*see* Dkt. No. 40), when fact discovery was still open and prior to the deadline to move to amend, (*see* Dkt. No. 39). Courts routinely find no undue prejudice where a movant seeks leave to amend while discovery is still open. *See, e.g.*, *Centennial Plaza Prop. LLC v. Trane U.S. Inc.*, No. 22-1262, 2023 WL 7403640, at *6 (D.N.J. Nov. 9, 2023) (finding no undue prejudice when plaintiff sought amendment within time prescribed by pretrial scheduling order while discovery was open); *Luppino v. Mercedes-Benz U.S.A. LLC*, No. 09-5582, 2014 WL 4474004, at *3 (D.N.J. Sep. 4, 2014) (finding no undue prejudice when plaintiff sought amendment within dates prescribed by pretrial scheduling order and new claim required no additional discovery); *Arrajj v. Am. Com. Ins. Co.*, No. 14-3233, 2014 WL 5798200, at *3 (D.N.J. Nov. 5, 2014) (finding no undue prejudice because amendment was requested before close of discovery period). In this nearly identical posture, the Court agrees that Defendants will not be unduly prejudiced.

Courts assessing undue delay also "look to the moving party's reasons for not moving to amend sooner," mindful that "a movant need not establish a compelling reason for its delay."

9

*Formosa Plastics Corp., USA v. ACE Am. Ins. Co.*, 259 F.R.D. 95, 100 (D.N.J. 2009). "There is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Id.* (quoting *Arthur*, 434 F.3d at 205). Here, Plaintiff's proffered reason for not moving sooner is that Defendants' previous counsel represented they would consent to amendment and only after new counsel appeared and declined consent did Plaintiff finally move. (*See* Pl.'s Reply Br. at 5–6, Dkt. No. 48). Defendants counter that counsel who allegedly represented that Defendants would consent to amendment was employed at Defendants' counsel's firm only "temporarily" and during that time "may or may not have indicated a willingness to consent subject to consultation with his client." (Defs.' Opp'n Br. at 13–14, Dkt. No. 44). Defendants offer no authority supporting the proposition that waiting for opposing counsel to consult with a client on whether to consent to amendment constitutes undue delay. (*See id.* at 11–13). To the contrary, courts have held that delaying a motion to amend "while the parties negotiated in good faith *does not* amount to undue delay." *Sourovelis v. City of Philadelphia*, No. 14-4687, 2016 WL 7203707, at *1 n.3 (E.D. Pa. Sep. 15, 2016) (emphasis added).

Defendants otherwise rely on *Cureton v. NCAA* for the proposition that an over-two-year delay amounts to undue delay when the movant knew of the factual basis for amendment during that time. (*See* Defs.' Opp'n Br. at 12–13, Dkt. No. 44 (citing 252 F.3d 267, 273 (3d Cir. 2001)). But *Cureton* involved a post-judgment motion to amend filed three years after the original complaint was filed when the movant knew of the information underpinning the motion almost two-and-a-half years prior to moving for leave. *Id.* at 273–74. And the proffered explanation for the delay in *Cureton* reflected solely the "plaintiffs' misplaced confidence" in a theory that was later rejected by the Third Circuit, resulting in reversal of the district court's grant of summary judgment. *Id.* at 274–75. In contrast, here, no decision on the merits has been rendered on any of

10

Plaintiff's theories and no trial date has been set.  Considering further that here, unlike in *Cureton*, Plaintiff's proffered explanation for the delay is attributable to good-faith negotiations with Defendants' former counsel, *cf. Sourovelis*, 2016 WL 7203707, at *1, the Court rejects Defendants' undue delay argument.

### III.      Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to Amend the Complaint, (Dkt. No. 40), will be **GRANTED**.  An appropriate Order will follow.

*/s/ Cari Fais*
HON. CARI FAIS, U.S.M.J.

cc:      Hon. Katherine S. Hayden, U.S.D.J.